**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:26-cv-20408-GAYLES**

ANDREW BOYD, *individually and*
*on behalf of all others similarly situated*,

      **Plaintiff**,

v.

THE COVER BEAR, LLC,

      **Defendant.**

                                    /

## ORDER

**THIS CAUSE** comes before the Court on Defendant The Cover Bear, LLC's Motion to Stay and to Compel Arbitration ("Motion"). [ECF No. 10]. The Cover Bear, LLC ("Cover Bear") moves this Court to (1) stay this action pursuant to 9 U.S.C. § 3 and (2) order Plaintiff to submit to and participate in arbitration with it pursuant to 9 U.S.C. § 4 in accordance with the terms set forth in the underlying arbitration agreement. Plaintiff filed a Response in Opposition to the Motion, [ECF No. 14], to which Cover Bear filed a Reply, [ECF No. 18]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is **DENIED**.

PolicyWagon operates the website policywagon.com, an online automobile-insurance referral website. Through its website, PolicyWagon connects consumers with available automobile insurance deals through its marketing affiliates, like Cover Bear. The website contains Terms and Conditions ("Terms") through which PolicyWagon secures its website visitors' consent to receive calls and text messages from it and its marketing partners, including Cover Bear. The Terms includes an arbitration provision which states that:

> You and we each agree that any and all disputes or claims that relate to or arise from your use of or access to our Services, or any products or services sold, offered, or purchased through our Services, including any contact from our **subsidiaries, affiliates, or agents** including, but not limited to, All Web Leads, Inc., shall be resolved exclusively through final and binding arbitration between us and you, or between our subsidiaries, affiliates, or agents and you[.]

[ECF No. 10–1 at 32] (emphasis added).

In its Motion, Defendant argues that "when [Plaintiff] signed up to receive Cover Bear's messages . . . on PolicyWagon's website, Plaintiff also explicitly agreed in the [Terms] to arbitrate any claims he may have about Cover Bear's messages." [ECF No. 10, Mot. at 1]. Although Cover Bear is not named in the Terms as a subsidiary, affiliate, or agent of PolicyWagon, Cover Bear contends that it "is a third-party beneficiary to [PolicyWagon's] Terms, and therefore able to enforce th[is] Arbitration Agreement."[1] [ECF No. 10, Mot. at 13]. The Court disagrees.

The Court finds that the "arbitration clause is not susceptible to the interpretation that a 'marketing partner' like [Cover Bear] is intended to benefit from the arbitration agreement." *Muhammad v. Rates Vip, LLC*, No. 25-CV-11862, 2026 WL 735253, at *4 (N.D. Ill. Mar. 16, 2026) (denying a motion to compel arbitration filed by a marketing partner, like Cover Bear here, under a similar set of facts); *Lucas v. Coastal Advantage Mktg. LLC*, No. 25-60450-CIV, 2025 WL 3759231, at *2 (S.D. Fla. Dec. 30, 2025) (same). The arbitration agreement is explicitly limited to disputes between Plaintiff and PolicyWagon and between Plaintiff and PolicyWagon's subsidiaries, affiliates, or agents. Cover Bear presents no evidence that, in addition to being a marketing partner, it is also a subsidiary, affiliate, or agent of PolicyWagon. While PolicyWagon's

---

[1] While Cover Bear argues that "the issue of whether a non-signatory is a third-party beneficiary to the contract" has been delegated to the arbitrator under the arbitration agreement, [ECF No. 1 at 13], Cover Bear concedes that "[s]ome courts, like the court in [*Muhammad v. Rates Vip, LLC*, No. 25-CV-11862, 2026 WL 735253at *4 (N.D. Ill. Mar. 16, 2026)], will consider third-party-beneficiary status as an element of formation of the contract, which therefore remains within the court's control despite the existence of a valid delegation provision." [ECF No. 18 at 9].

Terms state that marketing partners may contact consumers by text and SMS messages, [ECF No. 10–1 at 31], the arbitration agreement does not extend its applicability to marketing partners.

The broad "relate to or arise from" language contained in PolicyWagon's arbitration agreement "is only broad as to the arbitrable *subjects* that the signatories to the arbitration agreement have agreed to arbitrate, not as to the *identity* of the parties subject to the arbitration clause." *Lucas*, 2025 WL 3759231, at *2 (emphasis in original). "There is no language in the clearly written text of the arbitration clause that would allow [PolicyWagon's] Marketing Partners, such as Defendant [Cover Bear], to bind Plaintiff to arbitration, through a third-party beneficiary theory or any other theory regarding the 'Marketing Partner' relationship between Defendant [Cover Bear] and [PolicyWagon]." *Id.* Further, the "fact that 'marketing partners' receive certain incidental benefits under the Terms and Conditions, like the right to send consumers text messages, does not make them a third-party beneficiary of the arbitration clause under the law – especially when they are explicitly excluded from the list of those to whom such benefit applies." *Muhammad*, 2026 WL 735253at *4.

Accordingly, Defendant's Motion is **DENIED**. On or before **August 26, 2026**, Defendant shall respond to Plaintiff's Complaint.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 12th day of August, 2026.

**DARRIN P. GAYLES**
**UNITED STATES DISTRICT JUDGE**